1  Gail E. Cohen (093210), gcohen@bargerwolen.com
   Misty A. Murray (196870), mmurray@bargerwolen.com
2  BARGER & WOLEN LLP
   633 West Fifth Street, 47th Floor
3  Los Angeles, California 90071
   Telephone: (213) 680-2800
4  Facsimile: (213) 614-7399

5  Attorneys for Defendants
   Unum Group, The Paul Revere Life Insurance
6  Company, Frederick William Howarth III, d/b/a
   TBG Financial West aka TBG West
7

8             **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10

11  DAVID A.B. BURTON,                    )  CASE NO: CV09-9506 CAS (FMOx)
                                          )
12        Plaintiff,                      )
                                          )  **DEFENDANTS' OPPOSITION TO**
13        vs.                             )  **PLAINTIFF'S MOTION TO**
                                          )  **REMAND**
14  UNUM GROUP; THE PAUL REVERE           )
    LIFE INSURANCE COMPANY;               )  [Filed concurrently with Declarations of
15  FREDERICK WILLIAM HOWARTH             )  Fred Howarth and Eric L. Sayles;
    III; TBG FINANCIAL WEST, aka TBG      )  Supplemental Declaration of Jessica
16  WEST; and DOES 1-100, inclusive,      )  Sanchez; Declaration of Misty A.
                                          )  Murray attaching previously filed
17        Defendants.                     )  Declarations of Jessica Sanchez and
                                          )  Lucia LaPalme]
18                                        )
                                          )  Date:      March 8, 2010
19                                        )  Time:      10:00 a.m.
                                          )  Crtrm:     5 – 2nd Floor
20                                        )
                                          )  Complaint Filed: Nov. 23, 2009
21  _____  )

22

23

24

25

26

27

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1

## TABLE OF CONTENTS

2

PAGE

3  1.  INTRODUCTION ............................................................................................1

4  2.  PROCEDURAL BACKGROUND.......................................................................3

5  3.  DEFENDANTS' REMOVAL WAS TIMELY; SERVICE ON
       HOWARTH AND TBG WAS DEFECTIVE .....................................................3

6
7      A.  Burton Failed to Meet His Burden of Proving That Howarth and
            TBG Were Properly Served...........................................................................3

8      B.  The Time Period for Removal Is Triggered by Formal Service of
            Process; Consent to Jurisdiction after Defective Service Is Irrelevant ........6
9
10     C.  Under any Analysis, the Insurer Defendants' Removal was Timely
            under the "Last-Served Rule"........................................................................8

11  4.  FACTUAL BACKGROUND REGARDING THE ALLEN MATKINS
       EMPLOYEE BENEFIT PLAN ..........................................................................9
12
13  5.  THE PAUL REVERE POLICY IS GOVERNED BY ERISA .........................11

14     A.  An Employee of Allen Matkins Was Eligible for Coverage under the
            Paul Revere Policy.....................................................................................11

15     B.  The Individual Paul Revere Policy Is Part and Parcel of an ERISA
            Plan ...........................................................................................................13
16
17     C.  The Paul Revere Policy Does Not Fall Within the Safe Harbor ................18

18  6.  COMPLIANCE WITH ERISA FILING REQUIREMENTS IS NOT
       DETERMINATIVE OF WHETHER ERISA APPLIES ..................................19

19  7.  AN AWARD OF ATTORNEYS' FEES IS NOT WARRANTED ...................20

20  8.  CONCLUSION................................................................................................20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

PAGE

## Cases

*625 3rd Street Assoc. LP v. Alliant Credit Union*,
2009 WL 1139592 *3 (N.D. Cal. 2009) ................................................................. 8

*Altimari v. Sun Life Assur. Co.*, -- F.Supp.2d --
2009 WL 2971600 (E. D. Tex. 2009) ..................................................................... 17

*Armstrong v. Columbia/HCA Healthcare Corp.*,
122 F.Supp.2d 739(S.D. Tex. 2000) ....................................................................... 17

*Bonner v. Fuji Photo Film*, 461 F. Supp.2d 1112 (N.D. Cal. 2006) .......................... 8

*Castiglione v. The US Life Ins. Co of the City of NY*,
262 F. Supp. 2d 1025 (D. Az. 2003) ....................................................................... 14

*Crull v. GEM Ins. Co.*, 58 F.3d 1386 (9th Cir. 1995) ............................................... 18

*Elie G. Ghattas Trust v. UnumProvident Life Ins.*,
2004 WL 2709715 (E.D. Va. 2004) ......................................................................... 17

*Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460
(10th Cir. 1997) ........................................................................................................ 17

*Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341
(11th Cir. 1994) .............................................................................................. 13, 14, 17

*Halprin v. The Equitable Life Assur. Co.*, 267 F. Supp.2d 1030
(D. Co. 2003) .................................................................................................. 15, 16, 17

*Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489 (9th Cir. 1988) .......................... 18

*Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262 (9th Cir. 1991) ............................. 2

*Lear v. Louisville Ladder, Inc.*, 2007 WL 2947430 *4 (S.D. Cal. 2007) ................. 9

*Lewis v. City of Fresno*, 627 F. Supp. 2d. 1179 (E.D. Cal. 2008) ............................ 9

*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344,
119 S.Ct. 1332 (1999) ............................................................................................ 6, 7

*Orozco v. United Air Lines*, 887 F.2d 949 (9th Cir. 1989) ..................................... 19

*Pacificare Inc. v. Martin*, 34 F.3d 834 (9th Cir. 1994) ........................................... 18

*Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404
(9th Cir. 1995) .................................................................................... 2, 11, 12, 15

*Qualls v. Blue Cross Inc.*, 22 F.3d 839 (9th Cir. 1994) ......................................... 18

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-ii-

*Rosenberg v. Cornell Corp. Inc.*, 2008 WL 4447712 *2
(N.D. Cal. 2008)................................................................................................... 8

*Sarraf v. Standard Ins. Co.*, 102 F.3d 991 (9th Cir. 1996) ...................................... 18

*Schrader v. Hamilton*, 959 F. Supp. 1205 (C.D. Cal. 1997)..................................... 20

*Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir. 1985) ............................................ 19

*Shipley v. Provident Life and Accident Insurance Co.*,
352 F. Supp. 2d. 1213 (S.D. Ala. 2004) ........................................................ 15, 16

*Silvera v. Mutual Life Ins. Co. of NY*, 884 F.2d 423 (9th Cir. 1989).................... 18

*Smallwood v. Allied Pickfords, LLC,* 2009 WL 3247180 *6
(S.D. Cal. 2009) ................................................................................................... 8

*Smith v. Mail Boxes Etc.*, 191 F. Supp.2d 1155 (E.D. Cal. 2002) ........................... 9

*Steen v. John Hancock Life Ins. Co.*, 106 F.3d 904 (9th Cir. 1997) ....................... 18

*Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145 (9th Cir. 2000)................... 18

*Summers v. McClanahan* 140 Cal. App. 4th 403 (2006) .................................... 3, 4, 5

*Teitelbaum v. Soloski*, 843 F. Supp. 614 (C.D. Cal. 1994)........................................ 9

*Toxic Injuries Corp. v. Safety-Kleen Corp.*, 57 F. Supp. 2d 947
(C.D. Cal. 1999)................................................................................................... 20

*United Computer Sys. v. AT&T Corp.*, 298 F.3d 756 (9th Cir. 2002)...................... 8

*Waks v. Empire Blue Cross/Blue* Shield, 263 F.3d 872 (9th Cir. 2001)................. 14

**Statutes**

28 U.S.C. § 1446(b) ......................................................................................... 6, 7, 8

28 U.S.C. § 1447(c).............................................................................................. 20

29 U.S.C. § 1002(l) .............................................................................................. 13

29 C.F.R. § 2510.3-1(j) .................................................................................. 13, 18

Code of Civil Procedure § 416.90............................................................................ 3

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1.   **INTRODUCTION**

As alleged in his Complaint, Plaintiff David Burton ("Burton") contends that his disability carrier, The Paul Revere Life Insurance Company ("Paul Revere"), improperly calculated his monthly disability benefits under an individual insurance policy issued by Paul Revere (the "Policy"). Burton also contends that the insurance agent, Defendant Fred Howarth d/b/a TBG Financial West ("Howarth" and "TBG"), committed various torts in connection with the sale of the Policy. Burton filed his Complaint in state court, and Defendants Paul Revere, Unum Group, Howarth and TBG (the "Defendants") removed the action to federal court on the ground that Burton's claims against Paul Revere and Unum Group are governed by ERISA, a federal question. Burton contends that this Court should remand the action on the grounds that (1) Defendants' removal was not timely and (2) his Paul Revere Policy is not part of an employee welfare benefit plan governed by ERISA. Each of Burton's arguments is without merit.

First, Defendants' removal was timely. As detailed in the Howarth and Sanchez Declarations, while Burton attempted service on Howarth and TBG more than thirty days prior to removal, such service was defective because Burton failed to personally serve Howarth as legally required. Instead, Burton served an employee who was not authorized to accept service of process. Further, the conclusory evidence submitted by Burton that the employee was in fact authorized to accept legal process fails to meet his burden of proving that service was legally proper. Moreover, Paul Revere and Unum Group had their own thirty-day period within which to remove, and did remove within the proscribed period. Therefore, under any analysis, removal was timely.

Burton's second ground for remand fails because the Paul Revere Policy is "part and parcel" of an ERISA plan established by Burton's law firm. Burton's primary argument against the application of ERISA is based on an erroneous premise, *i.e.*, that the Paul Revere Policy was only offered to owners of the law firm. Again,

1  the actual evidence belies Burton's unsupported conclusions and clearly demonstrates

2  that the Paul Revere Policy was offered to at least one employee of Allen Matkins,

3  which is all that is required under Ninth Circuit law to fall within the purview of

4  ERISA. *See Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 264 (9th Cir. 1991)

5  (inclusion of even one employee is sufficient to bring an insurance policy within

6  ERISA's scope).

7       Further still, even if the Policy at issue were not offered to an employee, under

8  the Ninth Circuit's analysis in *Peterson v. American Life & Health Ins. Co.*, 48 F.3d

9  404, 407 (9th Cir. 1995), an individual policy covering an owner is still governed by

10  ERISA where such policy "was just one component of [the] employee benefit

11  program and that the program, taken as a whole, constitutes an ERISA plan."  As

12  detailed in the Declaration of Lucia LaPalme, an insurance underwriter for Paul

13  Revere, Burton's former law firm, Allen Matkins, provided group disability insurance

14  to its partners <u>and</u> employees through a group disability policy issued by Provident

15  Life & Accident Insurance Company ("Provident"), a company affiliated with Paul

16  Revere.  As explained by the insurance agent, Fred Howarth, in his Declaration, a

17  supplemental disability insurance program was negotiated by Allen Matkins with the

18  carriers.  As part of that program, the Paul Revere Policy was offered to Allen

19  Matkins partners as well as to its Executive Director, a non-attorney employee, in

20  order to supplement the coverage provided under the Provident policy.  The terms

21  negotiated for the supplemental policy included that the Paul Revere Policy was

22  guaranteed standard issue so no additional medical underwriting was required.  Of

23  note, Burton would not have qualified for the Paul Revere Policy *but for* his coverage

24  under the group Provident policy and this concession because he had a prior disability

25  claim in the preceding year.  In addition, the supplemental policy was offered at a

26  substantial premium discount.  Further, the Paul Revere Policy was subject to the

27  income and participation limits of the overall LTD Plan covering partners and

28  employees.  Finally, while participants who elected the Paul Revere Policy were

1  responsible for paying the premiums, Allen Matkins administered the payment to
2  Paul Revere through payroll deductions.  Thus, the Paul Revere Policy is inextricably
3  tied into the ERISA Benefit Plan established by Burton's law firm and is, therefore,
4  governed by ERISA.

5  For these reasons, Burton's motion to remand should be denied in its entirety.
6  Finally, should this Court determine that remand is proper, Burton's request for
7  attorneys' fees should be denied.  As set forth below, ample authority supported
8  Defendants' position that the Paul Revere Policy is governed by ERISA and that
9  Defendants' removal was made in good faith.

10  2.  **PROCEDURAL BACKGROUND**

11  Burton filed this action on November 23, 2009 in the Superior Court for the
12  State of California.  Paul Revere was served with a copy of the Summons and
13  Complaint on November 30, 2009, and Unum Group was served on December 2,
14  2009.  Burton attempted service on Howarth and TBG on November 25, 2009;
15  however, as explained below, such service was ineffective under California law.  Paul
16  Revere and Unum Group removed this action on December 29, 2009, within thirty
17  days of service upon them, and Howarth and TBG joined in that removal.  Burton
18  subsequently filed a motion to remand.

19  3.  **DEFENDANTS' REMOVAL WAS TIMELY; SERVICE ON**
20  **HOWARTH AND TBG WAS DEFECTIVE**

21  A.  Burton Failed to Meet His Burden of Proving That Howarth and TBG
22  Were Properly Served

23  Burton has the burden of proving that service on Howarth and TBG was
24  proper.  *Summers v. McClanahan* 140 Cal. App. 4th 403 (2006).  It is undeniable that
25  Howarth was not personally served with the Summons and Complaint.  Rather,
26  Burton's attorney served Howarth's assistant, Jessica Sanchez.  In that regard,
27  California Code of Civil Procedure Section 416.90 provides that service can only be

28

1  effected "by delivering a copy of the summons and of the complaint *to such person*
2  or *to a person authorized by him to receive service of process*." (Emphasis added.)

3      Therefore, the issue is whether Burton effected service on a person *authorized*
4  *to accept service* for Howarth and TBG. California law provides that a person is not
5  authorized to accept service of an individual merely because some type of agency or
6  other close relationship exists. Rather, an agent for service of process must have
7  *actual authority to accept service*; absent such authority, service is defective *even if*
8  the defendant receives actual notice of the action. *Summers, supra* at 414. While
9  courts have suggested that a close personal relationship may be sufficient to confer
10  such authority, there must be evidence that the personal connection is so close that
11  that it is "highly probable" that the defendant will receive actual notice of the *legal*
12  action against him. *Id*. Even under these circumstances, however, not any close
13  personal relationship will suffice. The California court of appeal's case analysis in
14  *Summers* is instructive.

15      In *Summers*, the summons and complaint at issue were served upon the
16  defendant's personal manager. The *Summers* court held that despite being the
17  defendant's personal manager, there was no evidence that the relationship was such
18  that it was "highly probable" the defendant would receive actual notice of legal
19  action. The manager's duties were limited to managing the defendant's career rather
20  than providing legal advice. Further, evidence submitted showed that upon receipt of
21  the summons and complaint, the manager forwarded the legal documents to the
22  defendant's attorney rather than to the defendant directly. The court stated that the
23  fact defendant eventually received notice of the action through her attorney was
24  irrelevant. *Id*. at 414-15. The *Summers* court explained: "Summers' rationale would
25  appear to be if service of process, even if totally outside the statutory prescriptions,
26  has somehow resulted in actual notice to the defendant in time to defend the action,
27  then any defects in the manner of service should be overlooked. As we previously

28

1  observed, no California appellate opinion has adopted this rationale and, we think, for
2  good reason." *Id.* at 415.

3       The same is true here.  According to Ms. Sanchez's declaration,[1] she was not
4  authorized to accept legal process on behalf of Howarth and TBG.  Supplemental
5  Declaration of Jessica Sanchez ("Supp. Sanchez Decl."), ¶ 3.  Rather, Ms. Sanchez's
6  duties were almost exclusively limited to assisting Howarth in personal matters, as
7  opposed to any business matters, including making travel arrangements, running
8  errands, scheduling appointments, opening mail, and maintaining his calendar.
9  Ms. Sanchez has been performing these duties since February 9, 2009 and has never
10 been authorized to accept legal service on behalf of Howarth or TBG.  Supp. Sanchez
11 Decl., ¶ 4; Declaration of Fred Howarth ¶ 3 ("Howarth Decl.").  In fact, upon receipt
12 of the summons and complaint from Burton's attorney, Ms. Sanchez (much like the
13 personal manager in *Summers*) did not notify Howarth of the papers because she did
14 not understand the legal significance of the documents she accepted.  Sanchez Decl.
15 ¶ 3.  In fact, Howarth first learned about the attempted service upon Ms. Sanchez
16 when Burton's Motion to Remand was filed.  Opposing counsel's conclusory
17 statement that Ms. Sanchez was legally authorized to accept service is simply not
18 supported by the evidence or case law.

19      Burton's counsel, Ms. McCall, challenges Ms. Sanchez's declaration and recall
20 of the events by attacking her credibility.  (Mot. pp. 5-6)  Ms. McCall's account of
21 the events, however, is directly contradicted by the surveillance tape that recorded the
22 parties' encounter on that date.  Specifically, Ms. McCall and Burton each state in
23 their sworn declarations that Ms. McCall contemporaneously recorded in writing the
24 service as well as Ms. Sanchez's representations to her.  Ms. McCall further claims
25 that she twice pulled out a blank piece of paper and recorded Ms. Sanchez's
26 statements to her (McCall. Decl. ¶ 4; Burton Decl. ¶¶ 5, 6).  Ms. McCall's and

27

---

28 [1] A copy of Ms. Sanchez's Declaration filed on December 29, 2009 (Doc. #1) is attached to the
Declaration of Misty A. Murray for the convenience of the Court and counsel.

1  Burton's declarations in this regard *are directly contrary to* the video recording of the
2  parties' encounter that day, which does not show Ms. McCall pulling out any blank
3  papers or writing anything down in the presence of Ms. Sanchez as she (and Burton)
4  claims she did. See Ex. A to the Declaration of Eric L. Sayles.[2]  In fact, the entire
5  face-to-face encounter between Ms. McCall and Ms. Sanchez lasted approximately
6  *15 seconds*. (*Id.*)

7      Finally, Ms. McCall further dismisses Ms. Sanchez's account by arguing that
8  Ms. Sanchez is biased as a result of her employment relationship with Howarth (Mot.
9  p. 5), yet Ms. McCall fails to advise this Court that, as reflected in the letters attached
10 to Burton's Complaint and Ms. McCall's contact information on her pleadings, she
11 shares the same home address as Burton.

12     B.    The Time Period for Removal Is Triggered by Formal Service of
13           Process; Consent to Jurisdiction after Defective Service Is Irrelevant

14     Burton argues that because Howarth and TBG voluntarily appeared and
15 consented to the Court's jurisdiction by filing an answer, they have waived their right
16 to assert that service was defective. Burton failed to cite any authority in support of
17 this argument, nor can he, as the removal statutes are governed by federal law, not
18 state service statutes. Specifically, Section 1446(b) of 28 U.S.C. governs the time
19 when a removal notice must be filed and states:

20         The notice of removal of a civil action or proceeding shall be filed
           within thirty days after the receipt by the defendant, through service or
21         otherwise, of a copy of the initial pleading setting forth the claim for
           relief upon which such action or proceeding is based, or within thirty
22         days after the service of summons upon the defendant if such initial
           pleading has then been filed in court and is not required to be served on
23         the defendant, whichever period is shorter.

24     In *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 119
25 S.Ct. 1332 (1999), the Supreme Court addressed the issue of whether formal service

26

27 [2] The 15-second portion of the video tape that shows the encounter between Ms. Sanchez and
   Ms. McCall is at the time stamp 11:20:40 – 11:20:56 a.m. and at the video recorded time of
28 3:04 – 3:19 minutes. A copy of the video has been filed manually with the Court.

-6-

1 is required to trigger the removal period or whether the thirty-day period may be

2 triggered by mere receipt of the complaint without formal service. *The Supreme*

3 *Court held that formal service is required to trigger the removal period* and

4 explained:

> 5 We read Congress' provisions for removal in light of a bedrock principle:
> An individual or entity named as a defendant is not obliged to engage in
> 6 litigation unless notified of the action, and brought under a court's
> authority, by formal process. **Accordingly, we hold that a named**
> 7 **defendant's time to remove is triggered by simultaneous service of**
> **the summons and complaint, or receipt of the complaint, "through**
> 8 **service or otherwise," after and apart from service of the summons,**
> **but not by mere receipt of the complaint unattended by any formal**
> 9 **service.** [*Murphy Bros., supra* at 347-48; emphasis added.]

10 In so holding, the Court expressly rejected the notion that the phrase "by

11 receipt through service or otherwise" in Section 1446(b) could be interpreted to mean

12 before formal service of the summons. The Court explained that "it would take a

13 clearer statement than Congress has made ... to render removal the sole instance in

14 which one's procedural rights slip away before service of a summons, *i.e.,* before one

15 is subject to any court's authority." *Id.* at 356.

16 In sum, the Supreme Court's pronouncement is unequivocal that formal service

17 actually subjecting the party to the court's authority is required to trigger to thirty-day

18 removal period. None of the cases cited by Burton interpret Section 1446(b) or even

19 discuss the time period for removal. And none of the cases support the proposition

20 that a voluntary appearance relates the court's jurisdiction back to the date of the

21 defective service. Such a result would be expressly contrary to the Supreme Court's

22 holding and interpretation of the removal statute in *Murphy Brothers*.

23 Because, as set forth above, formal service was not effectove on Howarth and

24 TBG, the time period for removal as to these defendants had not been triggered under

25 Section 1446(b) and their removal was timely.

26

27

28

1    C.   Under any Analysis, the Insurer Defendants' Removal was Timely under

2         the "Last-Served Rule"

3         As noted above, Section 1446(b) provides that a defendant must remove within

4    thirty days of service of the summons and complaint. There has been a split of

5    authority as to whether Section 1446(b) requires that removal occur within thirty days

6    of the first-served defendant (the "first-served rule") or whether each defendant has

7    its own thirty-day period to remove the action (the "last-served rule"), provided all

8    other defendants join in such removal. As one district court recently recognized,

9    however, there has been a recent trend in favor of the last-served rule, which has been

10   adopted by the Fifth, Sixth and Eighth Circuits.[3] *See Bonner v. Fuji Photo Film*, 461

11   F. Supp.2d 1112, 1117 (N.D. Cal. 2006). In adopting the last-served rule, the *Bonner*

12   court reasoned:

13        The Court is persuaded that [the last-served] rule is preferable for several
          reasons. First, although the text is not absolutely clear, the most
14        plausible reading of the statute is that Congress intended to extend the
          right of removal to *all* defendants in a civil action, regardless of when
15        they became parties to a case. *See* 28 U.S.C. § 1441(a) (permitting
          removal by "the defendant *or the defendants*" (emphasis added)). The
16        statute itself says nothing of the order in which defendants are or are not
          served, and this Court is reluctant to read additional limitations into the
17        statutory text, which merely demands that a defendant remove a case
          promptly once it is served or becomes aware of the basis for removal. …
18        Second, the last-served rule prevents opportunistic pleading by the
          plaintiff. Under the contrary rule, a plaintiff could thwart removal by
19        delaying the naming of certain defendants until after the first-named
          defendant's window of removal expires; by contrast, under the last-
20        served rule, a plaintiff cannot gain any advantage with the timing or
          tactics of his pleadings. A defendant's right to a federal forum should not
21        hinge on the happenstance of when a plaintiff pleases to incorporate the
          defendant into the case. [Citations omitted]

22

23        Following the trend noted in *Bonner*, many district courts in California have

24   adopted the last-served rule. *See, e.g., Smallwood v. Allied Pickfords, LLC,* 2009 WL

25   3247180 \*6 (S.D. Cal. 2009); *625 3rd Street Assoc. LP v. Alliant Credit Union*, 2009

26   WL 1139592 \*3 (N.D. Cal. 2009); *Rosenberg v. Cornell Corp. Inc.*, 2008 WL

27   ───────────────
     [3] The Ninth Circuit has not decided the issue. *See United Computer Sys. v. AT&T Corp.*, 298 F.3d
28   756, 763 n. 4 (9th Cir. 2002).

4447712 *2 (N.D. Cal. 2008); *Lewis v. City of Fresno,* 627 F. Supp. 2d. 1179, 1185
(E.D. Cal. 2008); *Lear v. Louisville Ladder, Inc.,* 2007 WL 2947430 *4 (S.D. Cal.
2007); *Smith v. Mail Boxes Etc.*, 191 F. Supp.2d 1155, 1159 (E.D. Cal. 2002).[4]

Applying the last-served rule here, Paul Revere's and Unum Group's removal
was unequivocally timely because it was made within thirty days of service of the
summons and complaint on those defendants.

## 4. FACTUAL BACKGROUND REGARDING THE ALLEN MATKINS EMPLOYEE BENEFIT PLAN

Burton's former law firm, Allen Matkins, offered a disability insurance benefit
program that included two components: The first component is a group disability
policy issued by Provident to Allen Matkins. *See* Exhibit A to the Declaration of
Lucia M. LaPalme ("LaPalme Dec.").[5] Allen Matkins purchased the group policy
(the "LTD Plan") to provide up to $20,000 per month in long-term disability benefits
to eligible employees, depending upon the participant's income. The LTD Plan is
governed by ERISA. *See* Ex. A to LaPalme Decl. The second component of the
plan, expressly negotiated by Allen Matkins, is a Paul Revere individual policy that
was offered to the partners of the Allen Matkins law firm as well as its Executive
Director, employee Michael Palmer, in order to provide additional disability benefits
of up to $5,000 per month to supplement the benefits available under the group
policy. Ex. B to the LaPalme Decl.; Declaration of Fred Howarth ("Howarth Decl.")
¶ 2; Ex. C to LaPalme Decl. at page 1. The amount available was also dependent
upon the participant's income. Ex. B to the LaPalme Decl. The Paul Revere
supplementary coverage was added to the group disability benefit program pursuant
to the terms of a "Supplemental Income Protection Plan" (or "SIPP") previously

---

[4] The case cited by Burton in support of the first-served rule (*i.e., Teitelbaum v. Soloski*, 843 F. Supp. 614 (C.D. Cal. 1994), is more than a decade prior to these recent cases.

[5] The LaPalme Declaration was filed on December 29, 2009 as part of Defendants' Notice of Removal (Doc #1) and is attached to the Declaration of Misty A. Murray for the convenience of the Court and counsel.

1  entered into between Allen Matkins and the insurers. Ex. C to the LaPalme Decl.
2  The SIPP describes how the individual policy (issued by Paul Revere) supplements
3  the base coverage provided by the firm's group LTD Plan.

4  The SIPP was specifically designed for Allen Matkins and the individual
5  policies were guaranteed standard issue ("GSI") for all partners, *i.e.*, there were no
6  medical underwriting requirements. The individual policies were also offered at a
7  substantially discounted premium. Page 3 of the SIPP explains the "basis of issue"
8  and states that "[t]he benefit will program around any coverage already in-force or
9  applied for, which the insured does not intend to replace." The Plan goes on to
10  explain that *"[t]otal coverage to be in-force would not exceed this plan design or our*
11  *issue and participation limits.""* Ex. C to LaPalme Decl. at page 3.

12  According to the Plan 2 design, outlined in a chart on the first page of the SIPP,
13  participants are eligible for coverage under the Plan (which includes the group LTD
14  benefit and the supplement benefit under the individual policy) for up to 60% of the
15  first $600,000 of the participant's insurable income. Ex. C to LaPalme Decl. at page
16  1. These insurance plan benefits were detailed in the Personal Benefit Menu that was
17  provided to Burton and all other eligible participants as part of the enrollment kit
18  (Ex. D to the LaPalme Decl.), along with an 11-page description of the Supplemental
19  Insurance Protection Plan entitled "SIPP Highlights" (Ex. E to the LaPalme Decl.).
20  Thus, the individual Paul Revere policies were part of the overall long term disability
21  insurance benefit program offered to Allen Matkins partners and employees and
22  subject to the income and participation limits of the Plan design.

23  In October 2005, when the SIPP was agreed to by Allen Matkins, Burton was
24  already collecting disability benefits under the Allen Matkins LTD Plan as a result of
25  an earlier disability, which incepted on May 26, 2004. Burton alleges he first
26  returned to work in November 2005 and that he satisfied the 180-day "actively at
27  work" requirement in order to qualify for issuance of the individual policy coverage
28  negotiated by Allen Matkins under the terms of the SIPP. Cmplt., ¶¶ 15-16. Burton

1    elected to participate in the SIPP program and accepted the offer on October 31,

2    2005. See Ex. C to the LaPalme Decl.

3       Based upon controlling Ninth Circuit authority, the individual Paul Revere

4    policy is, as a matter of law, part and parcel of an overall ERISA plan established by

5    Allen Matkins.

6    5.     **THE PAUL REVERE POLICY IS GOVERNED BY ERISA**

7       Burton argues that the Paul Revere Policy is not governed by ERISA based

8    primarily on the argument that because the Policy was only offered to

9    partners/owners of the law firm, and no employees, it cannot be part of an employee

10    benefit plan. Burton's argument is based upon a faulty premise — *i.e.*, that no

11    employees were eligible to obtain the Paul Revere policy. As set forth below, at least

12    one employee of Allen Matkins was eligible to obtain the Paul Revere Policy.

13    Moreover, that only partners actually obtained individual coverage from Paul Revere

14    is not dispositive because the individual policy is part and parcel of an overall ERISA

15    plan. Therefore, ERISA applies and Burton's motion to remand should be denied.

16       A.     An Employee of Allen Matkins Was Eligible for Coverage under the

17             Paul Revere Policy

18       As set forth in the SIPP, the Executive Director of Allen Matkins, Michael

19    Palmer, was also eligible to participate in the SIPP program. Ex. C to LaPalme Decl.

20    at page 1. Mr. Palmer is not a partner of the firm, but rather is an employee.

21    Howarth Decl., ¶2. Therefore, Burton's argument that "no employees were allowed

22    to participate" in the Paul Revere policy is wholly incorrect. (Mot. p. 9)

23       Moreover, that the Paul Revere Policy did not in fact cover an employee at the

24    time Burton filed his claim is irrelevant. In fact, the Ninth Circuit case relied on by

25    Burton directly supports Defendants' position. In *Peterson v. American Life &*

26    *Health Ins. Co.*, 48 F.3d 404 (9th Cir. 1995), the plaintiff was a partner in Quivira

27    Marine Service Center ("Quivira"). Quivira obtained a short-term health insurance

28    policy from American Life & Health Insurance Company ("American") for the

1    partner-plaintiff, one other partner as well as one employee. Subsequently, plaintiff's

2    partner and the employee obtained long-term insurance from another carrier, which

3    was paid for by Quivira. The plaintiff, however, did not qualify for the long-term

4    insurance and therefore remained the sole insured under the American policy.

5    *Peterson, supra* at 406. Plaintiff filed suit against American after the carrier denied

6    benefits, asserting various state law claims. American removed the action to federal

7    court on the ground that the American policy was governed by ERISA. Plaintiff

8    argued that ERISA did not apply because at the time of his claim for benefits, he was

9    the only person covered by the policy, and it did not cover any employees. *Id.* at 407.

10    The Ninth Circuit disagreed and held that ERISA applied, stating, in part, as follows:

11      [T]he fact that the American policy covered only a Quivira partner at the
12      time of Peterson's surgery is not determinative. We conclude that *the*
        *American policy was just one component of Quivira's employee benefit*
13      *program and that the program, taken as a whole, constitutes an ERISA*
        *plan*.

14      At all times relevant to this action, Quivira continued to provide
        insurance to at least one non-partner employee, *albeit not under the*
15      *American policy*. *See Kennedy,* 952 F.2d at 264 (coverage of even one
        non-owner employee is sufficient to bring a policy within ERISA's
16      scope); *Madonia v. Blue Cross & Blue Shield of Virginia,* 11 F.3d 444,
        448 (4th Cir.1993), *cert. denied,*511 U.S. 1019, 114 S.Ct. 1401, 128
17      L.Ed.2d 74 (1994) (coverage of non-owner employees rendered policy
        an ERISA plan). [*Peterson, supra* at 407-08.]
18

19    The same is true here. Allen Matkins provided insurance to its partners and

20    employees through the Provident policy. Additionally, through the SIPP, the Paul

21    Revere policy was offered to Allen Matkins partners as well as one employee, Mr.

22    Palmer, in order to supplement the coverage under the Provident policy. Further still,

23    as discussed more fully below, like the American policy in *Peterson*, the Paul Revere

24    policy here is just one component of the overall employee benefit plan.

25

26

27

28

1

B. The Individual Paul Revere Policy Is Part and Parcel of an ERISA Plan

2 Burton does not dispute that the LTD Plan is an "employee welfare benefit
3 plan" as defined under ERISA, 29 U.S.C. § 1002(1).[6] (Mot. p. 12) Rather, Burton
4 disputes that his individual Paul Revere Policy is part of the LTD Plan and therefore
5 also governed by ERISA.

6 The court's analysis in *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341
7 (11th Cir. 1994) is instructive. In *Glass*, the employer offered an insurance program
8 of basic group life and health insurance benefits, with premiums paid jointly by the
9 employer and employees. The employer also offered a *separate* individual "Elect"
10 life insurance policy that provided additional coverage and with premiums to be paid
11 entirely by the employee. *Glass, supra* at 1343-44. Only employees who
12 participated in the basic program were eligible to purchase the Elect policy and could
13 obtain up to $100,000 in coverage. The Elect policy was portable and could be
14 converted after the employee's job terminated, allowing the insured to keep the Elect
15 policy after his or her employment ended and coverage under the group plan ceased.
16 The Elect coverage was offered at discount rates and only to plan participants. *Id.*
17 The issue before the court was whether the individual Elect policy was part of the
18 overall ERISA plan and subject to ERISA. The Eleventh Circuit held that even after
19 conversion, the Elect policy could not be severed from the ERISA plan because the
20 Elect policy was offered at discount rates to participants and only to participants in
21 the basic plan. *Glass, supra* at 1345 ("dependent coverage feature could not be
22 severed from a plan and excluded from ERISA under Regulation 2510.3-1(j)."). The
23 court further held that because of the integral relationship between the Elect policy
24 and the group benefit plan offered by the employer, the fact that the policy was
25 portable after employment terminated did alter that conclusion. *Id.* at 1346. The

26

27 [6] Defendants also refer the Court to their Notice of Removal (Doc#1), in which the factors establishing that the LTD Plan is governed by ERISA are set forth. For purposes of economy, that
28 argument will not be set forth again here, but is fully incorporated herein by this reference.

1 | same is true here. The Paul Revere Policy was only available to participants in the
2 | LTD Plan and was offered at a discount with no medical underwriting. LaPalme
3 | Decl. at ¶ 8 and Exs. C-E. Significantly, given his prior disability, Burton would not
4 | have otherwise qualified for the individual Policy because he would not have met
5 | Paul Revere's standard medical underwriting requirements. LaPalme Decl. at ¶ 8.
6 | Burton attempts to distinguish *Glass* on the ground that it involved a converted[7]
7 | individual policy. (Mot. p. 19) This distinction is immaterial. In fact, this case
8 | negates Burton's argument that his individual Policy cannot be part of an ERISA plan
9 | because it is "portable." (Mot. p. 12)

10 |     Other Courts have endorsed the Eleventh Circuit's analysis in *Glass* under
11 | similar facts as those presented here. For example, in *Castiglione v. The US Life Ins.*
12 | *Co of the City of NY*, 262 F. Supp. 2d 1025 (D. Az. 2003), the employer offered a
13 | basic term life and accidental death and dismemberment group ("AD&D ") policy
14 | paid for by the employer as well as a voluntary supplemental AD&D policy paid for
15 | entirely by the employees. Relying on *Glass,* the district court held that the
16 | supplemental individual policy was part and parcel of the basic policy and did not fall
17 | within the safe harbor provisions because the basic policy was paid for by the
18 | employer and the supplemental policy was only offered to participants in the basic
19 | plan. *Castiglione, supra* at 1032. Burton argues that *Castiglione* is inapposite
20 | because it involved supplemental coverage that expanded upon the underlying basic
21 | group policy, as opposed to a separate policy from another carrier. (Mot. p. 18)
22 | However, that is precisely what the SIPP did here — expand coverage provided by

23 |

24 | [7] Burton's conversion argument (Mot. p. 20) is misplaced because Burton did not convert his
policy. As Burton recognizes in his motion, citing the Ninth Circuit's decision in *Waks v. Empire*
25 | *Blue Cross/Blue* Shield, 263 F.3d 872 (9th Cir. 2001), in order to escape the purview of ERISA, "a
converted policy is created when an ERISA plan participant leaves the plan and obtains new,
26 | separate, individual policy based on conversion rights contained in the ERISA plan. … It is
independent of the ERISA plan and does not place any burdens on the plan administrator of the
27 | plan." *Waks, supra* at 876. That is not what occurred here. Rather, Burton obtained his Paul
Revere Policy through the SIPP negotiated and offered by Allen Matkins, and there has not been
28 | any formal conversion of his individual coverage.

1 | the LTD Plan. That the LTD Plan and the Paul Revere policy are offered by different
2 | carriers is immaterial as the plans in *Peterson, supra* and *Halprin, infra* also involved
3 | separate carriers for the basic and supplemental coverage.

4 |     Likewise in *Shipley v. Provident Life and Accid. Ins. Co.*, 352 F. Supp. 2d 1213
5 | (S.D. Ala. 2004), the employer paid for coverage under a group long-term disability
6 | policy and offered an individual supplemental disability insurance policy to be paid
7 | for solely by the employee. *Shipley,* supra at 1216. The district court held that the
8 | individual supplemental long-term disability policy paid for by the employee was part
9 | of the overall ERISA plan and did not fall within the safe harbor regulation. The
10 | Court reasoned that the individual policy was offered at discount rates and was only
11 | available to the long-term disability plan participants without any additional
12 | underwriting. *Id.* at 1215-16. The court further reasoned that the supplemental
13 | coverage was intertwined with the basic group plan because the group plan served as
14 | a contribution to the supplemental plan: "The employer contributions to the LTD plan
15 | combined with the discounts Plaintiff received towards her SLTD [supplemental long
16 | term disability] plan as a result of her enrollment in the employer sponsored LTD
17 | [long term disability] plan qualify as 'contributions' made by her employer towards
18 | the SLTD." *Id.* at 1216.

19 |     Additionally, as in the Allen Matkins plan, the employer did more than merely
20 | collect premiums and allow the insurer to promote its plan. The employer selected
21 | the insurer, was involved in the selection of the policy terms and benefits offered to
22 | its employees, and held out the SLTD plan as part of its own in a memorandum to its
23 | employees. *Id.* Here, Allen Matkins contributed to the LTD Plan, negotiated the
24 | terms of the SIPP and endorsed the SIPP in a memorandum to employees which was
25 | offered at a 35% discount to participants of the LTD plan, and deducted premiums for
26 | the individual policy through payroll deductions. LaPalme Decl. at ¶ 9 and Exs. A,
27 | C- E.

28 |

-15-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1    Burton claims that *Shipley* is inapplicable because the partners pay the
2  premiums for the Paul Revere Policy, and because the premium discount continued
3  even after the partner left the firm. (Mot. 19.) Again, Burton's distinctions are
4  unpersuasive. In *Shipley*, the employees were also solely responsible for paying
5  premiums for the SLTD policy, and nothing in that case suggests that the premium
6  discount ceased after employment.

7    Finally, Burton's attempt to downplay Allen Matkins' role in the SIPP is
8  undermined by the evidence that Allen Matkins expressly negotiated the Paul Revere
9  supplementary coverage, which was added to the group disability benefit program
10  pursuant to the terms of the SIPP entered into between Allen Matkins and the insurers
11  on October 31, 2005. Ex. C to the LaPalme Decl. The SIPP was presented to
12  participants in a memorandum from Allen Matkins which Allen Matkins
13  administered premiums payments through payroll deductions. Ex. E to LaPalme
14  Decl. While Allen Matkins' role may not have been as significant as the employer's
15  role in Shipley, its role was more than sufficient to bring the SIPP outside of ERISA's
16  safe harbor (see section C below).

17    In *Halprin v. The Equitable Life Assur. Co.*, 267 F. Supp.2d 1030 (D. Co.
18  2003), the employer offered a comprehensive insurance program to physicians,
19  including group insurance from Standard Insurance Company and an additional
20  program that offered individual disability policies to physicians through Equitable
21  Life Assurance. *Halprin, supra* at 1035-36. The physicians paid for the individual
22  policies through payroll deductions, but the employer's role in the individual policies
23  was otherwise limited. The district court found that the individual policy was
24  governed by ERISA because (1) it was a plan intended to benefit employees (2) the
25  plan was established by the employer who selected the insurer and designed
26  replacement insurance offered at a discount and (3) the employer was involved in
27  subsequent changes. *Id.* at 1036-37. Again, here, Allen Matkins negotiated and
28  offered the SIPP for the benefit of participants at a discount rate in order to

1  supplement the LTD Plan coverage. LaPalme Decl. ¶ 5 and Exs. C-E. Burton argues
2  that *Halprin* is not applicable because in that case the individual policies provided
3  "uniform" coverage. Here, the basic disability coverage provided under the Paul
4  Revere policies was the same and offered as a guaranteed *standard* issue. The only
5  thing that may have differed was the amount of the monthly benefit purchased by the
6  individual participant, which was also the case in *Glass, supra*, where participants
7  had the option of purchasing up to $100,000 in additional coverage under the Elect
8  policy. Moreover, like the employer is *Halprin*, Allen Matkins negotiated the terms
9  of the SIPP to supplement the LTD Plan at discounted rates. LaPalme Decl. ¶ 5, and
10  Exs. C-E.

11  The cases cited above compel the conclusion that the Paul Revere Policy was
12  part and parcel of the overall ERISA plan established by Allen Matkins.[8]

13  Finally, Burton's arguments that the policies make no reference to each other
14  and are fully integrated are immaterial. As detailed above, the terms of the SIPP
15  make clear that "[t]he benefit will program around any coverage already in-force or
16  applied for, which the insured does not intend to replace." The SIPP goes on to
17  explain that *"[t]otal coverage to be in-force would not exceed this plan design or our*
18  *issue and participation limits."* Ex. C to LaPalme Decl. at page 3. According to the
19  Plan 2 design, outlined in a chart on the first page of the SIPP, partners and the firm's
20  executive director (an employee) are eligible for coverage under the Plan (which
21  includes the group LTD benefit and the supplement benefit under the individual
22  policy) for up to 60% of the first $600,000 of their insurable income. LaPalme Decl.,

23

24  [8] *See also Altimari v. Sun Life Assur. Co.*, -- F.Supp.2d -- 2009 WL 2971600 (E.D. Tex. 2009)
   (court held that the optional AD&D policy paid for by employee was a component of the overall
25  group plan and therefore governed by ERISA because the basic plan was established and paid for
   by the employer for the benefits of employees and only plan participants could elect the optional
26  policy. p. *3.); *Armstrong v. Columbia/HCA Healthcare Corp.*, 122 F.Supp.2d 739(S.D. Tex.
   2000) (court held that optional life insurance paid for by employee part of overall ERISA plan
27  established by employer.); *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460 10th Cir. 1997)
   (court held that optional coverage was a feature of the ERISA plan notwithstanding the fact that it
28  was paid for by the employee); *Elie G. Ghattas Trust v. UnumProvident Life Ins.*, 2004 WL
   2709715 (E.D. Va. 2004) (supplemental insurance plan part of overall ERISA plan).

1 Ex. C at page 1 and Ex. E.. Therefore, it is clear that the LTD Plan and the SIPP
2 were part of a fully integrated plan and that the Paul Revere policy was subject to the
3 income and participation limits of the LTD Plan as a whole.

C. The Paul Revere Policy Does Not Fall Within the Safe Harbor Rules

5 Under the Department of Labor's "safe harbor" rules, an insurance program is
6 deemed to fall outside of ERISA's coverage so long as *all* of the following criteria
7 are satisfied: (1) no contributions are made by the employer; (2) participation in the
8 program is completely voluntary for employees; (3) without endorsing the program,
9 the sole function of the employer is to permit the insurer to publicize the program to
10 employees; and (4) the employer receives no consideration in connection with the
11 program. *See* 29 C.F.R. § 2510.3-1(j); *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d
12 489, 492 (9th Cir. 1988). Conversely, the existence of *any one* of the above four
13 criteria "prevent[s] the exclusion of the insurance plan from ERISA coverage." *Id.*;
14 *see Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1153 (9th Cir. 2000) (citing
15 *Steen v. John Hancock Life Ins. Co.*, 106 F.3d 904, 917 (9th Cir. 1997)); *Sarraf v.*
16 *Standard Ins. Co.*, 102 F.3d 991, 993 (9th Cir. 1996); *Crull v. GEM Ins. Co.*, 58 F.3d
17 1386, 1390 (9th Cir. 1995); *Pacificare Inc. v. Martin*, 34 F.3d 834, 837 (9th Cir.
18 1994); *Qualls v. Blue Cross Inc.*, 22 F.3d 839, 844 (9th Cir. 1994); *Silvera v. Mutual*
19 *Life Ins. Co. of NY*, 884 F.2d 423, 426 (9th Cir. 1989); *Kanne, supra,* 867 F.2d at
20 492.

21 Because the Paul Revere policy is part of the LTD Plan, it does not fall under
22 ERISA's "Safe Harbor" exception.

23 First, like the cases discussed in section B, above, Allen Matkins contributed to
24 the individual Paul Revere policy based upon its contributions to the underlying LTD
25 Plan, participation in which was required in order to qualify for the discounted,
26 guaranteed standard issue Paul Revere Policy.

27 Second, participation in the LTD program was not voluntary and was required
28 in order for the participant to be eligible for additional coverage under the SIPP.

1 Further, under the Plan design, the income and participation limits of the LTD Plan
2 applied to the Paul Revere Policy and governed the benefit levels under the individual
3 policy.

4 Finally, Allen Matkins expressly negotiated the Paul Revere supplementary
5 coverage, which was added to the group disability benefit program pursuant to the
6 terms of the SIPP entered into between Allen Matkins and the insurers on
7 October 31, 2005, and the SIPP which was also presented to participants in a
8 memorandum from Allen Matkins. Allen Matkins also administered premiums
9 payments for the SIPP through payroll deductions. Exs. C-E to the LaPalme Decl.

10 6. **COMPLIANCE WITH ERISA FILING REQUIREMENTS IS NOT**
11 **DETERMINATIVE OF WHETHER ERISA APPLIES**

12 Burton argues that because Allen Matkins did not include the Paul Revere
13 individual policy on its various ERISA filings and allegedly failed to comply with
14 ERISA's reporting requirements as to the Paul Revere Policy, the Policy is not
15 governed by ERISA. (Mot. pp. 13-15). However, even if an employer fails to
16 comply with ERISA's procedural requirements, that does not prevent the application
17 of ERISA to the plan. The Ninth Circuit's decision in *Orozco v. United Air Lines*,
18 887 F.2d 949 (9th Cir. 1989) is instructive. In *Orozco*, the employer funded a
19 voluntary termination program that compensated employers at varying amounts
20 depending upon whether the employee was part time or full time. *Orozco*, *supra* at
21 951. The employer, however, failed to comply with ERISA's procedural
22 requirements in setting up the termination program. *Id.* at 952. In finding that
23 ERISA preemption applied, the Ninth Circuit held that "compliance with ERISA's
24 procedural requirements for setting up an employee benefit plan is not a prerequisite
25 to ERISA coverage." *Id.* (citing *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503-04 (9th
26 Cir. 1985). The same is true here. Thus, any alleged failure by Allen Matkins to
27 follow ERISA's requirements as applied to the SIPP and the Paul Revere policy does
28 not negate ERISA's applicability or preemptive effect.

7. **AN AWARD OF ATTORNEYS' FEES IS NOT WARRANTED**

Whether an award of attorneys' fees pursuant to 28 U.S.C. 1447(c) is warranted is within the sound discretion of the court. While a finding of bad faith is not a prerequisite, courts have refused to award fees where the defendant's removal was made in good faith and a reasonable basis for removal existed. *See Toxic Injuries Corp. v. Safety-Kleen Corp.*, 57 F. Supp. 2d 947, 957-58 (C.D. Cal. 1999); *Schrader v. Hamilton*, 959 F. Supp. 1205, 1212 (C.D. Cal. 1997). As set forth above, Defendants' have ample authority to support their argument that ERISA governs Burton's claims under the group contract and that removal was proper. Accordingly, in the event this Court grants Burton's motion, this Court should decline to award Burton's request for fees.

8. **CONCLUSION**

For the foregoing reasons, this Court should deny Burton's motion in its entirety and retain jurisdiction of this action.

Dated: February 16, 2010                     BARGER & WOLEN LLP


By: /s/ Gail E. Cohen
        GAIL E. COHEN
        MISTY A. MURRAY
        Attorneys for Defendants Unum
        Group, The Paul Revere Life
        Insurance Company, Frederick
        William Howarth III, d/b/a TBG
        Financial West aka TBG West